UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORMAN N. SHELTON, | : |
| Plaintiff | : No. 3:CV-13-1469 |
| v. | : (Judge Nealon) |
| DR. BAKER, et al., | : |
| Defendants | : |

FILED
SCRANTON
SEP 0 8 2014
PER_____
DEPUTY CLERK

## MEMORANDUM

Norman N. Shelton, an inmate confined in the United States Penitentiary, Lewisburg ("USP-Lewisburg"), Pennsylvania, filed the above captioned Bivens[1] action, pursuant to 28 U.S.C. § 1331. (Doc. 1, complaint). Shelton names as defendants G. Keith Baker, DDS, Chief Dental Officer; Steve Brown, Health Services Administrator ("HSA"); Francis Fasciana, Physician Assistant (P.A.); and David Young, Associate Warden. Id.

Shelton alleges that Dr. Baker and P.A. Fasciana denied him medical care and pain medication for a dental problem, and HSA Brown and Associate Warden Young were made aware of this situation but failed to take any action over their subordinates. Id. As relief, Shelton seeks injunctive relief, i.e., examination and

---

[1] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

treatment by an outside professional dentist, revocation of Dr. Baker's license to practice dentistry, and criminal charges of assault and battery against all other defendants; and compensatory damages in the amount of $2,500,000.00, plus costs and other relief that the Court deems "just and proper." Id.

Presently pending is Defendants' motion to dismiss and/or for summary judgment. (Doc. 23). The motion is fully brief and is ripe for disposition. For the reasons set forth below, Defendants' motion will be granted.

I. **Summary Judgment**

   A. **Bivens Standard**

Plaintiff's claims are filed pursuant to 28 U.S.C. § 1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Id. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same

legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n.16 (M.D. Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992); Sharpe v. Costello, 2007 WL 1098964, *3 (M.D. Pa. 2007).

### B.   Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–89

(1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

The pertinent portions of the Middle District of Pennsylvania Local Rules of Court, which are set forth in the Standing Practice Order served upon Plaintiff on June 3, 2013 (Doc. 3), provide that, in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The Rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Though Plaintiff has filed a brief in opposition[2] to Defendants' pending motion, he failed to file a counter statement of facts, nor requested an enlargement of time within which to do so. Thus, he has failed to controvert the

---

[2] Plaintiff's "Memorandum in Support of Plaintiff's Brief in Opposition to Defendants' Brief for Summary Judgment" contains a section entitled "Statement of Facts," which includes two paragraphs, numbered 3 and 4. See (Doc. 28). These paragraphs, however, contain nothing more than conclusory, unsupported allegations, expounding on the facts set forth in Plaintiff's complaint. They do not in any way address or correspond to Defendants' Statement of Material Facts.

material facts contained in Defendants' statement. As such, Defendants' statement of material facts will be deemed as admitted.

C.  **Motion to Dismiss**

The Court in Williams v. Hull, 2009 WL 1586832, *2-3 (W.D. Pa. 2009), set forth the motion to dismiss standard of review, as annunciated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and as refined in Ashcroft v. Iqbal, 556 U.S. 662 (2009), as follows:

> The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, ---U.S. ----, ----, 129 S.Ct. 1937, ----, 173 L.Ed.2d 868, ----, 2009 WL 1361536 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir.2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly,

550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570. In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, *1 (D. Del. 2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232 (quoting Twombly, 550 U.S. at 556 n.3).

## II. Statement of Facts

Shelton was first evaluated by Dental Services on April 13, 2010, for pain in a prior filling, stating that "the old filling I have hurts when I eat or drink." (Doc. 25-1 at 22-25, Bureau of Prisons Dental Health Encounter). Dr. Baker, the Chief Dental Officer, offered to restore the filling, but Shelton refused the treatment because he was feeling light-headed from a hunger strike. Id. Shelton was then advised to seek dental care again once he was ready for treatment. Id.

On May 27, 2010, Shelton returned to Dental Services following the end of his hunger strike. See (Doc. 25-1 at 26, Dental Routine Care Treatment). Plaintiff's filling was restored. Id.

On January 7, 2011, Shelton had a cavity filled by Dental Services staff. (Doc. 25-1 at 27-28, Dental Encounter).

On June 13, 2011, Shelton was seen by Dental Services, complaining that "[his] two back teeth are aching." (Doc. 25-1 at 34-36). He was noted to have gingivitis, but no other pathology. Id.

On December 1, 2011, Shelton was scheduled for a cleaning. (Doc. 25-1 at 37, Dental Encounter). When "Officer Hunsinger went to escort [Shelton]...[he] told the officer that 'today was inconvenient for him' and asked if he could come back another day." Id. Shelton's routine cleaning was then conducted on February 29, 2012. See (Doc. 25-1 at 38-39).

On October 9, 2012, Dr. Baker again evaluated Shelton for pain in his tooth when chewing. (Doc. 25-1 at 40-44, Dental Encounter). The examination revealed significant decay. Id. Dr. Baker restored the tooth, but informed Shelton that it might require additional treatment, such as a root canal or extraction. Id.

On November 14, 2012, Dr. Baker evaluated Shelton for increased pain in the tooth that was previously restored, which revealed that a root canal was required, and the root canal was performed that day. See (Doc. 25-1 at 47-50, Dental Encounter; Dental Services).

On November 21, 2012, Shelton was seen for post treatment pain. (Doc. 25-1

7

at 51, Dental Encounter - Administrative Note). Dr. Baker prescribed Penicillin and Ibuprofen for Shelton's dental pain post treatment. Id.

On November 30, 2012, Shelton was again evaluated by Dr. Baker for pain when biting down, in the tooth the root canal was performed. See (Doc. 25-1 at 52-53, Dental Encounter). Dr. Baker made some adjustments on the provisional restoration and prescribed an antibiotic for any residual infection. Id.

On December 28, 2012, Shelton was seen by Dr. Baker for pain in the tooth behind the one on which the root canal was performed. (Doc. 25-1 at 57-59, Dental Encounter). An examination revealed a crack in the tooth, from which Dr. Baker removed the fractured enamel and filled the tooth. Id.

On April 3, 2013, Dr. Baker evaluated Shelton for complaints of a "bump on [his] gum." See (Doc. 25-1 at 60-64, Request for treatment; Dental Encounter; and Medical Treatment Refusal). The examination revealed that a fistula had formed, indicating an extraction of the tooth might be necessary. Id. Prior to removal, Dr. Baker advised Shelton to allow a simple procedure to confirm the source of the fistula. Id. Shelton refused the treatment even after he was advised of the potential complications of doing so. Id.

On April 4, 2013, Shelton was seen in the Medical Department by P.A. Fasciana. (Doc. 25-1 at 6, Clinical Encounter). He requested "an antibiotic for a

cyst I have on my gum", indicating that he was examined the day before by Dr. Baker "but he refused to treat me because I have a lawsuit against him." Id. P.A. Fasciana referred Shelton to the Dental Clinic for treatment, id, and notified Dr. Baker. See (Doc. 25-1 at 67, Dental Encounter - Administrative Note). Dr. Baker scheduled Shelton for an appointment the next available day. Id.

Dr. Baker saw Shelton on April 8, 2013. (Doc. 25-1 at 68-69 Dental Encounter - Administrative Note). During this encounter, Shelton refused any treatment other than the prescription of antibiotics, although Dr. Baker assured him this was not a cure. Id. Dr. Baker provided a short course of antibiotics with the agreement that Shelton would then consent to a definitive treatment. Id.

On April 23, 2013, after hearing that Shelton had sought medical over the prior weekend, and knowing that Shelton has a chronic infection of a lower right molar, Dr. Baker sent an officer to escort Shelton to the Dental Clinic. See (Doc. 25-1 at 72, Dental/Administrative Encounter). Shelton refused to leave his cell, stating that he only wanted Penicillin. Id. Staff again advised Shelton that antibiotics would not cure the problem and that delaying treatment could cause further damage; however, he refused treatment. See (Doc. 25-1 at 70, Medical Treatment Refusal).

Shelton continually requested antibiotics from Health Services staff only to

be informed that doing so will not treat the problem. See (Doc. 25-1 at 73-79). Staff last advised Shelton in writing on May 10, 2013, to contact the Dental Clinic when he was prepared to accept treatment for the abscessed tooth. See (Doc. 25-1 at 76, Dental Encounter - Administrative Note). Further, on this date, Dr. Baker responded to Plaintiff's request for Penicillin with the following:

> You will not be provided antibiotics repeatedly for a problem that can (should be) resolved with a single relatively easy and low risk procedure. Giving you repeated antibiotics might allow you [to] develop resistant bacteria and a potentially lethal infection. I implore you to allow the proper treatment be provided to you. If you decide to do so, please send me a note.

(Doc. 25-1 at 75, response).

On May 31, 2013, Plaintiff filed the instant action in which he seeks damages, as well as a "full examination and treatment by an outside professional, revocation of Dr. Baker of his license to practice dentistry, criminal charges of assault and battery filed against Dr. Baker, [and] accessory before, during & after the fact be filed against all other defendants." (Doc. 1, complaint at 3).

### III. Discussion

#### A. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that

10

indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel

and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Moreover, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator, or non-physician defendant, cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id. at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the

inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer, 685 F. Supp. at 1339.

The record in the instant action clearly demonstrates that Plaintiff received medical attention, as well as medication for all his dental needs, and that the attention he received lacks the requisite deliberate indifference to support a section 1983 claim. Plaintiff was immediately seen on April 13, 2010, by dental services, at the first complaint of pain in his filling. Although Dr. Baker offered a remedy, Plaintiff refused treatment at that time. However, on May 27, 2010, when Plaintiff decided he was ready for treatment, dental services immediately restored his filling. The record evidence demonstrates that Plaintiff was provided with dental care and

treatment for his teeth and gums on several occasions. The only time he did not receive treatment was when he refused the treatment, or when the only treatment he would accept was not medically indicated. In spite of Dr. Baker's repeated indications to Plaintiff of the dangers of not accepting treatment and continuing to simply mask the issue by taking antibiotics, he refused any testing or treatment of the fistula that had formed, beyond a prescription for antibiotics. There is no indication, whatsoever, that any person from the USP-Lewisburg medical or dental staff, at anytime, declined to give treatment.

At best, Plaintiff's complaint can be described as a disagreement with Dr. Baker's methods in treating his fistula. His disagreement with the medical Defendants' course of treatment, however, does not serve as a predicate to liability under § 1983. See White v. Napoleon, 897 F.2d at 108-10 (3d Cir. 1990) (No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (finding that a claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in

order to inflict pain or harm upon him. See Rouse, 182 F.3d 192. Thus, the record reveals nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical and dental staff at the prison. The complaint fails to articulate an arguable claim; therefore, Defendants, Dr. Baker and P.A. Fasciana, are entitled to summary judgment. See White, 897 F.2d at 108-10.

Moreover, non-medical Defendants, HSA Brown and Associate Warden Young will be dismissed, as these Defendants cannot be found deliberately indifferent to Plaintiff's medical needs when he was admittedly under the continual care of the prison medical and dental staff. Durmer, 991 F.2d at 69. See also Thomas v. Zinkel, 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001) (Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."), citing Durmer, 991 F.2d at 69 n.14); Newton v. Reitz, 2009 WL 233911(M.D. Pa. 2009) ("[T]he United States Court of Appeals for the Third Circuit held in Durmer that a non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff."), citing Durmer, 991 F.2d at 69.

**B.   Claims against HSA Brown and Associate Warden Young**

15

Defendants argue that Plaintiff fails to state a claim against Defendants Brown and Young because the complaint reveals that they lack any personal involvement in the alleged wrongs, and the allegations against these Defendants are based solely upon their supervisory roles. (Doc. 26 at 4-7). This Court agrees.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

The complaint against Defendants HSA Brown and Associate Warden Young suffers from a lack of alleged personal involvement in the events at issue. There is no evidence of record that these Defendants were personally involved in any of

16

Plaintiff's alleged constitutional violations. Thus, it is apparent that Plaintiff is attempting to impose liability on the basis of <u>respondeat superior</u>. As such, HSA Brown and Associate Warden Young are entitled to judgment as a matter of law.

Moreover, to the extent Plaintiff is attempting to establish the personal involvement of Defendants Brown and Young by way of their responses to his grievances, the filing of a grievance is not sufficient to show the actual knowledge necessary to establish personal involvement. <u>See</u> <u>White v. Bledsoe</u>, 2011 WL 2292279 (M.D. Pa. Jun. 8, 2011) (Kane, J.) (holding that summary judgment was warranted in favor of the defendant for his role in responding to appeal of inmate's designation to SMU), <u>citing</u> <u>Rode</u>, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); <u>Brooks v. Beard</u>, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that they were involved in the underlying allegedly unconstitutional conduct); <u>Burnside v. Moser</u>, 138 F. App'x 414, 416 (3d Cir. 2005) (ruling that failure of prison official to process an administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved). Accordingly, these Defendants are entitled to summary judgment as a matter of law.

## C.    <u>Preliminary Injunction and Temporary Restraining Order</u>

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. <u>See</u> <u>American Tel. and Tel. Co. V. Winback and Conserve Program, Inc.</u>, 42 F.3d 1421, 1426-27 (3d Cir. 1994), <u>cert. denied</u>, 514 US. 1103 (1995). Issuance of such relief is at the discretion of the trial judge. <u>Orson, Inc. v. Miramax Film, Corp.</u>, 836 F. Supp. 309, 311 (E.D. Pa. 1993). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:

    (1)    likelihood of success on the merits;
    (2)    irreparable harm resulting from a denial of relief;
    (3)    the harm to the non-moving party if relief is granted; and
    (4)    the public interest.

<u>United States v. Bell</u>, 2003 WL 102610, *2 (M.D. Pa. 2003) (Conner, J.) (internal citations omitted). It is the moving party that bears the burden of satisfying these factors. <u>Id.</u> The standards for a temporary restraining order are the same as those for a preliminary injunction. <u>Bieros v. Nicola</u>, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. <u>See</u> <u>Continental</u>

Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 356 (3d Cir. 1980). Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight, 882 F.2d at 801. A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." Id. The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued. Id. Speculative injury does not constitute a showing of irreparable harm. Continental, 614 F.2d at 359; see also Public Serv. Co. v. West Newbury, 835 F.2d 380, 383 (1st Cir. 1987). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Instant Air Freight, 882 F.2d at 801 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1964)). Of course, a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge. See Weaver v. Wilcox, 650 F. 2d 22, 27 n.13 (3d Cir. 1981) (concluding that the prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions, but not claims for damages)

Based on Plaintiff's failure to prevail on the merits of the instant civil rights action, his request for a preliminary injunction, demanding a "full examination and

treatment by an outside professional dentist, revocation of Dr. Baker's license to practice dentistry", (Doc. 1), will be denied.

A separate Order will be issued.

Dated: September 8, 2014

**United States District Judge**